Mr. Justice ThacheR
delivered the opinion of the court.
This case comes up by appeal from the circuit court of Claiborne county.
The bank recovered a judgment against H. W. Barnes and H. N.-Spencer, and execution was levied upon “ a pleasure carriage,” as the property of Spencer. Sarah A. Spencer, the wife of defendant Spencer, claimed the carriage as her own property, whereupon a trial of the right of property was had, which resulted in a verdict for the claimant. The bill of exceptions is to the ruling of the court upon the trial, and purports to include all the evidence adduced in either behalf upon the trial.
The point upon which the case turns, seems to be the construction to be given to a part of the answer of the claimant *184 extracted by means of a bill of discovery. She replied that the carriage levied upon was purchased by her with money allowed her by her husband, for the hire and services of ten slaves, conveyed to her “in her own right,” by her father, in 1840.
The third charge of the court below, which alone we deem it necessary to notice, was as follows, “that if the jury believed that Mrs. Spencer purchased the carriage in question with the labor of negro slaves, conveyed to her as her separate property, by her father in the year 1840, they must find by law for the claimant.”
The propriety of the foregoing charge involves two inquiries. First, whether the language of the claimant’s answer, by which we must give a construction to the conveyance under which she held, conveyed to the claimant a property in the slaves to her separate use; and, secondly, whether the statute of 1839, enacted for the protection of the property oí femes covert, is limited in its effect to the specific property, mentioned in a conveyance as belonging to the wife, and its increase, or extends to the profits growing out of it.
A general principle that governs in the interpretation of conveyances of the kind first spoken of, is, that there must vbe a clear and unequivocal intention evinced in the instrument by the grantor, that the wife shall possess the exclusive interest in the property conveyed. It does not appear, from the elementary works or leading authorities, that any set form of words is necessary to create such an estate, but it must clearly be manifest, either that the husband is excluded, or that the wife’s control is independent of the husband’s power. The best received technical phraseology is the employment of the words “ sole and separate use.” Among other terms used in cases decided to carry with them such an estate and collected in Clancy’s Husband and Wife, are, “to be at her disposal,” “to enjoy and receive the issues and profits,” “given for the livelihood,” '“the wife’s receipt to be a discharge, notwithstanding her coverture,” “her receipt in writing to be a discharge,” “to be delivered up to her when she shall demand or require the same,” &c. These expressions either pointedly exclude the husband, or so plainly *185 limit to the wife, the right, title, interest, enjoyment or control of the property conveyed, as to distinctly and positively preclude the common law authority or investiture of property in the husband, as to leave no doubt of the design of the grantor or donor. The same work has enumerated a series of cases where the language has been interpreted not to convey property to the separate use of a feme covert. For. example, “her own use and benefit,” “ to her use;” in one case, there was a bequest toa married woman, “ for her sole and separate use,” and subsequently in the same will, a further amount “ for her own use and benefit.,” which latter was held not to invest a separate estate in the wife. At common law, the wife’s rights vest in the husband upon marriage. He gains an estate of freehold in the inheritance of his wife, in her right, during her life. Her rights to her other property are dormant during marriage, and vested in her husband. The words “in her own right,” we are constrained to' think, at common law, would have been no stronger in effect than the phrase “ to her own use and benefit,” and would have operated as a conveyance of the specific property in the deed to her husband, had it not been for the intervention of the statute. There is a want of explicit expression of intention in the language, which will not permit the grant in this case to be viewed as an exception to the general rule of construction, to which we have directed ,our attention.
The second point of consideration is, the effect and force of such a conveyance under the statute. And here it is worthy of note, that the phraseology of the first section of the statute and of the claimant’s answer are unanimous in meaning. It allows a married woman to become seized of property, real or personal, “ in her own name and as of her own property.” In speaking of her property in slaves, however, it adds, that she shall possess the same, “as -her separate property.” Were not the intention of the legislature clearly manifest, from thé act itself, to protect in the wife the property, real and personal, with which she may become seized, such language in a common law conveyance would have operated as a conveyance to the husband. This is still further demonstrated by the circumstance that her permis *186 sion to hold slaves, “ as her separate property,” is qualified and encumbered with a condition by the statute. H. H. 332, sec. 25. The legislature was well aware of the legal import of the language it used. As a separate property in the wife, the profits of the labor of such slaves would have belonged to her as well as the specific slaves. The condition is, that “ the control and management of all such slaves, the direction of their labor, and the receipt of the productions thereof, shall remain to the husband, agreeably to the laws heretofore in force.” All the distinctions which existed in conveyances of this kind at common law are carefully observed and regarded in the statute.
From the whole tenor of the act, it is plainly deducible that it was designed to guard the specific property from any liability for the debts and contracts of the husband. It reaches no further. The act does not relieve the husband from his common law obligation for the support of the wife and family, nor place that charge upon the wife in consideration of the aberration from the common law in respect to the investiture of the husband with the property of the wife, neither does it make any provision for the family out of such proceeds in the event of the decease of the husband. The products of such property follow the common law rule and belong to the husband. We are compelled, then, to the conclusion that the conveyance in this case was not to the separate use of the wife, except under the conditions of the statute, and that under its provisions, the productions of the slaves in question were the property, and liable for the debts and contracts of the husband.
The court below, therefore, in charging the jury as above set forth, charged in a manner not warranted by the evidence and the law bearing upou it, and consequently erroneously. The effect of such a charge might have seriously involved the rights of the plaintiff in the execution.

The judgment must be reversed, and a new trial awarded.